UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRES CRUZES LAND & CATTLE, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, A SUBSIDIARY OF NATIONWIDE INSURANCE COMPANY, an Ohio corporation; GARY HERD, an individual; NANCY HERD, an individual; and DOES 1-30, inclusive,<br><br>Defendants. | Case No.: 2:15-cv-00449-MCE-DAD<br><br>(As Consolidated) |
| JOHN W. BUSBY II, TRUSTEE OF THE EDWARD PESTANA TRUST, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, A SUBSIDIARY OF NATIONWIDE INSURANCE COMPANY, an Ohio corporation; GARY HERD, an individual; NANCY HERD, an individual; and DOES 1-30, inclusive,<br><br>Defendants. | Case No.: 2:15-cv-00764-MCE-DAD<br><br>(Associated Case ) |

On February 5, 2015, Plaintiff Tres Cruzes Land and Cattle LLC ("Tres Cruzes"), a California limited liability company, filed a complaint in the Superior Court of the State of California, County of San Joaquin, seeking damages from its liability insurance carrier, Defendant Scottsdale Insurance Company ("Scottsdale") for breach of contract and breach of the covenant of good faith and fair dealing. According to Tres Cruzes, Scottsdale wrongfully failed to provide indemnification under its policy for fire losses to property owned by Tres Cruzes in Woodbridge, California. In addition to Scottsdale, Plaintiff named Gary Herd and Nancy Herd ("the Herds"), who held the first mortgage on the property where the fire occurred, as Defendants but asserted only a single cause of action for declaratory relief against the Herds. Although Scottsdale is alleged to be a citizen of Ohio and Arizona, the diversity of citizenship which would otherwise exist between Scottsdale and Tres Cruzes was arguably defeated by the inclusion of the Herds who are California residents. On February 26, 2015, Scottsdale nonetheless removed the lawsuit to this Court on diversity grounds, contending that the Herds were fraudulently joined and that consequently their citizenship should be disregarded for diversity purposes. That case was docketed as Case No. 2:15-cv-00449-MCE-DAD.

Counsel for Tres Cruzes filed a second action against Scottsdale in state court on January 14, 2015, this time on behalf of John W. Busby II, Trustee of the Edward Pestana Trust ("Trustee"). The Trustee is listed along with the Herds as a loss payee under the Scottsdale policy. His case, commenced in the Superior Court of the State of California, County of Alameda, also sought damages on theories of breach of contract and breach of the covenant of good faith and fair dealing. Although initially instituted against Scottsdale alone, on February 6, 2015, the day after counsel filed its San Joaquin County suit on behalf of Tres Cruzes, a First Amended Complaint was filed in the Alameda County action which asserted a declaratory relief claim against the Herds. Once the Herds were joined as defendants, Scottsdale removed the Trustee's lawsuit to the Northern District of California on February 26, 2015, the same day it removed the San Joaquin County action brought by Tres Cruzes to this Court. On April 7, 2015,

pursuant to stipulation, the parties agreed to transfer venue of the Trustee's lawsuit to this Court, where it was assigned Case No. 2:15-cv-00764-GEB-DAD.  Pursuant to a notice that the Trustee's action was related to the Tres Cruzes action already pending before the undersigned, a related case order was signed on May 8, 2015, and the Trustee's action was redenominated as Case No. 2:15-cv-00764-MCE-DAD.  Then, by Stipulation and Order dated May 19, 2015, both the Tres Cruzes and Trustee lawsuits were consolidated for all purposes, including trial, under Case No.2:15-cv-00449-MCE-DAD.

Two motions for remand are now before the Court.  The first was filed on behalf of Tres Cruzes on March 27, 2015, before the above-enumerated cases were consolidated.  That motion, scheduled for hearing on May 14, 2015, was submitted in accordance with Eastern District Local Rule 230(g) on May 12, 2015.  Then, on June 16, 2015, after the Trustee's action was transferred to this District, counsel renoticed a motion to remand previously filed in the Northern District for hearing on August 6, 2015.  That motion, virtually identical to its predecessor in Tres Cruzes, was also submitted on the papers on July 31, 2015.  For the reasons set forth below, both Motions are DENIED.[1]

## BACKGROUND

On or about July 30, 2013, Scottsdale issued a commercial property policy of insurance covering property owned by Tres Cruzes and located at 18938 East Highway 88 in Clements, County of San Joaquin, California (the "Covered Property").  The Covered Property included apartments, along with a restaurant known as La Strada 88.  Under the terms of the policy, Scottsdale undertook to insure the Covered Property for direct physical loss or damage.

///

---

[1] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefs pursuant to Local Rule 230(g).

On September 8, 2014, a fire occurred which resulted in fire, smoke, water and other damage to the Covered Property.  On or about December 18, 2014, Tres Cruzes submitted a sworn statement in proof of partial undisputed loss to the building alone that amounted to more than $3,000,000.  Tres Cruzes alleges that Scottsdale has failed to timely pay in accordance with its policy and claims that Scottsdale's dilatory conduct allowed the subject property to further decay and be exposed to the elements for more than six months.  In addition, the Trustee claims he made a claim under the Loss Payable Provisions Endorsement of the policy in the amount of $454,484.18, which Trustee claims represented the outstanding sum under its installment note dated October 25, 2012, as secured by a deed of trust on the Covered Property.  The Trustee also contends that payment for his claim was not timely made by Scottsdale.

According to Tres Cruzes, in mid-January of 2015, it learned that the Herds, who held the first mortgage on the property, had initiated foreclosure proceedings.  This followed the filing of a lawsuit by Tres Cruzes against the Herds on September 19, 2014, less than two weeks after the fire.  In that action, filed in San Joaquin County Superior Court, Tres Cruzes sought money damages against the Herds for intentional and negligent misrepresentation, as well as for injunctive and declaratory relief.[2]  Tres Cruzes claims that the loan agreement it entered into with the Herds contained usurious terms, including charges, fees, interest and other expenses.   That lawsuit remains pending in state court.

On January 14, 2015, Tres Cruzes filed its "bad faith" lawsuit against Scottsdale, seeking damages for breach of contract and breach of the covenant of good faith and fair dealing.  Then, less than a month later, the Trustee filed a similar lawsuit.  Both actions were ultimately removed to this Court on diversity of citizenship grounds despite their inclusion of the Herds (who, like Trustee and Tres Cruzes, are California residents)

---

[2] Tres Cruzes requests that the Court take judicial notice of documents filed in that action pursuant to Federal Rule of Evidence 201. That request is unopposed and is granted. Additionally, the Court further notes that Scottsdale has also asked the Court to judicially notice portions of the insurance policy at issue. That request is also unopposed and is granted.

as Defendants. Through the motions for remand now before the Court, Scottsdale claims that the Herds are sham defendants whose residency should not be considered for diversity purposes. Tres Cruzes and the Trustee oppose those motions on grounds that the Herds' inclusion as defendants is proper and therefore defeats diversity.

**STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). Diversity jurisdiction under 28 U.S.C. § 1332 is one of two recognized grounds for such removal. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. at § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

Despite this presumption against the propriety of jurisdiction, courts must nonetheless look beyond the labels in the complaint and realign the parties according to their real interests. See Scotts Co. LLC v. Seeds, Inc., 688 F.3d 1154, 1157 (9th Cir. 2012) (a court is not bound by plaintiff's alignment of the parties; parties are aligned

5

based on whether their interests coincide as to the "primary matter in dispute"); In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008) ("Although the plaintiff is generally the master of his complaint, diversity jurisdiction cannot be conferred by the parties' own determination of who are plaintiffs and who defendants"; instead, a court must realign parties in order to safeguard against "artful pleading" and ensure an actual "collision of interest" as to the "principal purpose of the suit"); Dolch v. United Cal. Bank, 702 F.2d 178, 181 (9th Cir. 1983) ("The courts, not the parties, are responsible for aligning the parties according to their interests in the litigation."). Consequently, "[c]ourts may realign parties, according to their ultimate interests, whether the realignment has the effect of conferring or denying subject matter jurisdiction on the court." Smith v. Salish Kootenai Coll., 434 F.3d 1127, 1133 (9th Cir. 2006); see also Dolch, 702 F.2d at 181 (""If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes . . . Realignment may be required even if a diversity of interests exists on other issues.").

      The court's ability to realign the parties in this regard means that "a plaintiff may not keep a case out of federal court by fraudulently naming a nondiverse defendant." Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 745 (2014). Instead, as the Ninth Circuit has repeatedly recognized, a defendant may remove a civil action against a resident defendant when the plaintiff has no basis for suing that defendant. See, e.g., Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (a non-diverse defendant may be disregarded for purposes of determining complete diversity if that defendant was fraudulently joined).   Like the presumption against removal jurisdiction in the first instance, the burden of proof for a defendant claiming fraudulent joinder is a heavy one. Davis v. Prentiss Properties Ltd., Inc., 66 F. Supp. 2d 1112, 1113 (C.D. Cal. 1999). "Fraudulent joinder" is nevertheless a "term of art" and has nothing to do with the "mental state" of the plaintiff. Id. at 1114. If the plaintiff's particular lawsuit states no colorable legal claim against the resident defendant,

the actual motive for joining the defendant is immaterial.  See <u>Albi v. Street & Smith Publications</u>, 140 F.2d 310, 312 (9th Cir. 1944).

     With these guiding principles in mind, the Court now turns to the merits' of the parties' respective arguments as to the propriety of jurisdiction here and whether remand back to state court is proper.

## ANALYSIS

     Both Tres Cruzes and the Trustee insist that the Herds are indispensable parties in this litigation because there remains an "actual controversy" between the parties.  Tres Cruzes cites its usury lawsuit against the Herds as support for the proposition that it "has interests that are antagonistic to the Herds." Tres Cruzes Mot., 9:22-23.  Similarly, the Trustee claims that its interests conflict with the Herds because any foreclosure sale instituted by the Herds "would have wiped out TRUSTEE's security interest altogether." Trustee's Mot., 9:3-5, 10:4-6.

     The fact that these conflicts exist, however, does not mean that the Herds are properly aligned with Scottsdale in this particular litigation.  The present lawsuit is fundamentally one against Scottsdale for damages occasioned by its delay in paying sums due under its policy for losses sustained by the Covered Property.  Indeed, examination of both the Tres Cruzes and Trustee lawsuits shows that Plaintiffs seek no affirmative relief from the Herds in either instance.  Tres Cruzes seeks only a "judgment of declaratory relief" as to the amount of POLICY proceeds, if any, to which GARY HERD and NANCY HERD are entitled…" Tres Cruzes Compl., ECF No. 1, Prayer for Relief, ¶ 4.  Similarly, the TRUSTEE seeks only a "judgment of declaratory relief that SCOTTSDALE must pay TRUSTEE the amounts due under the POLICY…" Trustee Compl., Case No. 15-cv-00764-MCE-DAD, ECF No. 1, Prayer for Relief, ¶ 3.[3]

---

[3] In addition, according to the uncontroverted Declaration of Sonia Martin, counsel for Scottsdale, attorney Ralph Zappala, who represents both Tres Cruzes and the Trustee in these consolidated proceedings, confirmed  that his clients' only claims against the Herds pertain to the apportionment of

As the Ninth Circuit made clear in <u>Scotts</u>, courts are not bound by a plaintiff's alignment of the parties, and repositioning in accord with litigants' real interests is proper based on whether such interests "coincide as to the primary matter in dispute." <u>Scotts Co. LLC v. Seeds, Inc.</u>, 688 F.3d at 1157.  The Circuit has made it equally clear that the courts, not the parties, are responsible for realignment as necessary to safeguard against "artful pleading" in contravention of the "principal purpose of the suit." <u>In re Digimarc Corp. Derivative LItig.</u>, 549 F.3d at 1234;  <u>Dolch v. United Cal. Bank</u>, 702 F.2d at 181.

Applying the "principal purpose" test approved by the Ninth Circuit makes it clear that the primary dispute in both the Tres Cruzes and Trustee lawsuits is to obtain proceeds payable under the Scottsdale policy as well as damages flowing from Scottsdale's failure to pay such damages sooner.  The Herds share the same interests in that regard since they too are looking to assert their loss payee rights as holders of the first mortgage against the Scottsdale proceeds.  The fact that the Tres Cruzes and the Herds are involved in another lawsuit with respect to the terms of the underlying loan does not alter the fact that they share the same interests here in seeking to maximize recovery against Scottsdale.  Additionally, with regard to the Trustee's action, whether or not the Herd's intended foreclosure could eliminate the Trustee's inferior mortgage position in its entirety does not alter the fact that as to any recovery against Scottsdale, the interests of the Trustee and the Herds coincide as to obtaining damages against Scottsdale.

In <u>U.S. Fidelity and Guar. Co. ("USF&G") v. A & S Mfg. Co.,</u> 48 F.3d 131 (4th Cir. 1995), the Fourth Circuit applied the same "principal purpose" test adopted by the Ninth Circuit in determining whether the realignment of the parties was necessary.  <u>Id.</u> at 134.  In that case, the insured, A & S, submitted demands to three different insurers for defense and indemnity in a suit regarding contamination at A & S manufacturing

---

insurance proceeds under the Scottsdale policy, with no other damages or injunctive relief from the Herds being sought.

facilities.  One of the insurers, USF&G, filed a declaratory relief action against the insured and the two other carriers in order to determine the parties' coverage obligations.  The Fourth Circuit realigned the parties, reasoning that any dispute between the insurers was secondary to the primary issue of their liability to A & S as the insured.  Id.  Consequently, the court realigned all the insurers as plaintiffs in seeking a determination of coverage, with the insured on the other side as a defendant.  This rationale applies equally here, where all the potential beneficiaries of the Scottsdale policy belong in one camp, with Scottsdale in opposition.

At most, any conflict between the Herds, the Trustee and Tres Cruzes revolves around how the insurance should be divided.  The USF&G court, however, rejected any contention that such apportionment questions make the parties adverse.  See id. at 134 ("any disputes existing among the insurers are ancillary to the primary issue of the duty to indemnify"); see also Eikel v. States Marine Lines, Inc., 473 F.2d 959, 964-65 (5th Cir. 1973) (how monies should be divided does not eliminate the primary cause of action for such monies in the first place).  Under that logic, which this Court finds persuasive, Scottsdale properly disregarded the citizenship of Gary Herd and Nancy Herd for purposes of determining that complete diversity existed between the plaintiffs in both the Tres Cruzes and Trustee actions, and Scottsdale as the responding party in those lawsuits.  Therefore, the Motions to Remand both fail since the Court finds diversity of citizenship to be present.

///

///

///

///

///

///

///

///

**CONCLUSION**

For the reasons just stated, the Motions to Remand filed on behalf of Tres Cruzes (ECF No. 14) and the Trustee (ECF No. 42) are DENIED.

IT IS SO ORDERED.

Dated:  November 9, 2015

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT